RICH MICHAELSON MAGALIFF MOSER, LLP
340 Madison Avenue, 19th Floor
New York, NY 10173
212.220.9405
Howard P. Magaliff

Hearing date and time: 5/1/14
Objection date and time: 4/25/14 at 5:00 PM

*Attorneys for Howard P. Magaliff,
Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                                   :
                                                                                              :         Chapter 11
COMMONWEALTH REALTY GROUP, LLC,          :         Case No. 13-23214 (RDD)
                                                                                              :
                                        Debtor.                                :
-----------------------------------------------------------------x

# TRUSTEE'S MOTION TO SELL THE DEBTOR'S REAL PROPERTY LOCATED AT 1547 COMMONWEALTH AVENUE, BRONX, NEW YORK FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO SECTIONS 363(b) AND (f) OF THE BANKRUPTCY CODE

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

    Howard P. Magaliff, the chapter 11 trustee (the "Trustee") of the estate of Commonwealth Realty Group, LLC (the "Debtor"), by his attorneys Rich Michaelson Magaliff Moser, LLP, respectfully submits this motion for an order pursuant to sections 363(b) and (f) of the Bankruptcy Code, title 11, United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 6004-1 authorizing him to sell the Debtor's real property free and clear of liens and interests, with liens and interests to attach to the proceeds, but subject to valid residential leases, and states:

**INTRODUCTION**

1. The Debtor filed a voluntary *pro se* petition for relief under chapter 11 of the Bankruptcy Code on July 22, 2013 (the "Filing Date"). Subsequently, the Debtor retained Elizabeth A. Haas, Esq., PLLC as counsel.

2. On October 24, 2013, the Court entered an Order granting the application of the United States Trustee to appoint a chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code [doc. 28]. On the same day, the United States Trustee appointed the Trustee as the chapter 11 trustee [doc. 29], and on October 25, the Court entered an Order approving the Trustee's appointment [doc. 32].

3. The Debtor owns a 12-unit residential apartment building located at and known as 1547 Commonwealth Avenue and 1756 E. Tremont Avenue, Bronx, NY (the "Property"). The Property also has commercial space totaling in the aggregate approximately 4,000 square feet. The Property has been cited with over 300 housing code violations and as a result has been placed in the New York City Housing Preservation & Development's Alternative Enforcement Program.

4. The Trustee retained MYC & Associates, Inc. ("MYC") as property manager and broker, pursuant to Orders dated, respectively, October 28, 2013 [doc. 37] and November 8, 2013 [doc. 41]. Marc Yaverbaum of MYC is the main person performing these functions.

5. Pursuant to Order dated March 17, 2014 (the "Sale Procedures Order") [doc. 51], the Court approved bidding procedures (the "Bidding Procedures") for a public auction sale (the "Auction Sale") of the Property, the terms and conditions of the sale (the "Terms and Conditions of Sale"), and notice provisions. The Auction Sale will be conducted at the Property on April 29 by Marc Yaverbaum as auctioneer.

{00006188v1 }

6.     In anticipation of holding an auction, MYC began marketing the Property as soon as it was retained.  Many prospective investors expressed interest in the Property, and several made offers.  Keyoumars Keypour of QV Management Corp. made the highest offer – $650,000 cash – and agreed to act as the stalking horse buyer at the Auction Sale.  Mr. Keypour has executed the Terms and Conditions of Sale and posted a deposit of $67,500.

7.     By this Motion, the Trustee seeks entry of an order: (i) approving the results of the Auction Sale and confirming the Successful Bidder and Second Highest Bidder (as those terms are defined in the Terms and Conditions of Sale); and (ii) authorizing the sale of the Property to the Successful Bidder or the Second Highest Bidder, as the case may be, pursuant to sections 363(b) and (f) of the Bankruptcy Code.

## MARKETING AND SALE OF THE PROPERTY

8.     Since its appointment, MYC has actively marketed the Property.  MYC is advertising the sale on the following websites: *www.myccorp.com*, *www.loopnet.com*, *www.zillow.com*, *www.cityfeet.com*, *www.trulia.com*, *www.propertycampaign.com* and *www.nytimes.com*.  MYC placed "For Sale" signs on the Property to attract interest from local vehicular and pedestrian traffic, and e-blasted its subscriber database.  MYC gathered and made available to prospective buyers due diligence materials including a current title report, rent roll and Registration Rent Roll Report for the Property dated November 5, 2013 from the New York State Division of Housing and Community Renewal.  Mr. Yaverbaum met prospective buyers at the Property for inspections.  MYC will continue to market the Property until the Auction Sale, and, as required by the Sale Procedures Order, will provide a copy of the Terms and Conditions of Sale and the Bidding Procedures to each person who expresses an interest in the Property.  The Trustee also received a number of calls and spoke to potential investors, and referred them to MYC for information about the Property and to conduct due diligence.

3

9. As a result of the marketing efforts, approximately 20 people requested due diligence materials, visited the Property and/or spoke with Mr. Yaverbaum. Three people made offers. Mr. Yaverbaum has advised the Trustee that he expects a robust and active Auction Sale. In short, the Trustee believes that the marketing efforts were more than ample for the Property under the circumstances.

10. The Auction Sale will be conducted on April 29, 2014 at 11:00 a.m. at the Property by Mr. Yaverbaum, who agreed to act as the auctioneer for no additional compensation beyond what MYC would be entitled to as the broker. Pursuant to the Sale Procedures Order, the Terms and Conditions of Sale and Bidding Procedures, the initial bid at the Auction Sale will be the $650,000 stalking horse offer, with successive bids in increments of $25,000 or such other amount as the auctioneer, in consultation with the Trustee, determines. At the conclusion of the auction, the auctioneer will announce the Successful Bidder and Second Highest Bidder. Each bidder is required to provide a 10% deposit.

## APPLICABLE AUTHORITY

### A.    The Proposed Sale is Within the Trustee's Sound Business Judgment

11. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …" 11 U.S.C. § 363(b)(1). In addition, section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

12. In determining whether to approve a proposed sale under section 363(b), courts require that the sale be based upon the sound business judgment of the debtor. *In re G.S. Distrib., Inc.*, 331 BR 552, 559 (Bankr. S.D.N.Y. 2005). *See also Licensing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir.1997) ("A sale of a substantial part of a Chapter 11 es-

4

tate may be conducted if a good business reason exists to support it."); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir.1983); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir.1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application); *In re Enron Corp.*, 284 B.R. 376, 392 n. 15 (Bankr.S.D.N.Y.2002). "Although Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts in … this Circuit have required that it be based upon the sound business judgment of the debtor." *In re RSL COM PrimeCall Inc.*, No. 01-11457 (ALG), 2002 Bankr. LEXIS 367 at *26-27 (Bankr. S.D.N.Y. Apr. 11, 2002). Once the Trustee articulates a sound business justification, there "'is a presumption that in making a business decision the [decision maker] acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (citation omitted).

    13. The Trustee believes that the Auction Sale of the Property constitutes the prudent and proper exercise of his business judgment, and should be approved pursuant to section 363(b) of the Bankruptcy Code. The Property is in a deplorable state. There were more than 300 housing code violations of record when the Trustee was appointed – some quite serious – and the Trustee has does not have the resources to make the substantial and significant repairs needed and perform basic maintenance, or to manage the Property long-term; he has been able only to maintain the insurance policy for the Property. The title report reflects scores of liens for emergency repairs, tax liens, and a judgment of foreclosure and sale in favor of Ridgewood Savings Bank; Ridgewood has assigned the mortgage and there is no indication that the mortgagee of

record has taken any action to enforce its rights.  It is of paramount importance to the Trustee that the Purchaser of the Property has the resources and know-how to make repairs and maintain the building to protecting the safety of tenants.

14. The Trustee believes that proceeding with approval of the Auction Sale to the Successful Bidder or Second Highest Bidder, after the extensive marketing efforts undertaken and to be undertaken, maximizes the value that the estate will receive for the Property.  After the sale is completed, the Trustee will be in a position to assess the best course for the balance of the case – whether to obtain a bar date, pursue litigation claims (if any) and propose a plan of liquidation, convert the case to chapter 7, or seek dismissal.

15. Based on all of the foregoing, sound business reasons exist to justify the sale of the Property.  Therefore, the Trustee submits that the proposed sale to the Successful Bidder, or the Second Highest Bidder if the Successful Bidder fails to close, on the Terms and Conditions of Sale pursuant to section 363(b) of the Bankruptcy Code, should be approved.

**B.      Sale Pursuant to Section 363(f) is Appropriate**

16. The Property will be sold "as is" and "where is" pursuant to section 363(f) of the Bankruptcy Code, free and clear of all liens, claims and interests of entities other than the estate of whatever kind or nature, with such liens, claims, interests and encumbrances, if any, to attach to the proceeds of the Auction Sale in such order and priority as they existed immediately prior to the date of the Auction Sale, and subject to, among other things: (a) any state of facts that an accurate survey would show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; (f) any damage or destruction between the date of the auction sale and the date of the closing; and (g) all deed restrictions.

6

17. The sale of the Property will be subject to valid residential leases and any applicable law, rule or ordinance in respect of such leases. The Property will, however, be sold free and clear of all tenancies and occupancies where there is no valid residential lease, subject to any applicable law, rule or ordinance in respect of such tenancies and occupancies as a number of the apartments are rent regulated. Based on the limited records available to the Trustee, it does not appear that there are any current leases, and all occupied apartments are on a month-to-month basis.

18. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

19. The Trustee submits that section 363(f) is satisfied in this case because, *inter alia*, any entity with a lien against the Property could be compelled to accept a money satisfaction of its interest.

C. **Sale Free and Clear of Purported Commercial Leasehold Interest**

20. The Trustee also proposes to sell the Property free and clear of the purported commercial leasehold interest and occupancy of Liquid Lounge.

7

{00006188v1 }

21. The Debtor and Liquid Lounge entered into a purported written lease dated July 2013 for the Debtor's commercial space (the "<u>demised premises</u>") in the building known as 1756 E. Tremont Avenue (the "<u>Lease</u>").  The Lease was a sweetheart deal – it was below market rate, for 10 years, covered 100% of the commercial space, and an insider transaction because one of the owners of Liquid Lounge, Juan Caban, is the father of James Caban, the Debtor's sole member.  The Trustee believes that the Lease is invalid, because, among other things, it was a transaction not in the ordinary course of business and may have been entered into post-petition without Court approval as required by section 363(b) of the Bankruptcy Code; the Debtor certainly never sought any approval by the Court.  If the transaction was pre-petition, in addition to all other defects it was entered into on the eve of bankruptcy, and no details about the Lease – the tenant, terms, *etc.* – are listed in the Debtor's Schedule G.  Mr. Caban admitted at a hearing on March 4, 2014 that the terms of the Lease had not been disclosed.

22. On February 17, 2014, the Trustee filed a complaint against James Caban and Liquid Lounge (the "<u>Defendants</u>") in adversary proceeding # 14-08204 pursuant to Bankruptcy Rules 7001(1), (2), (7) and (9) and sections 541(a) and 542(a) of the Bankruptcy Code, (i) to determine the validity of the Lease and to declare the Lease void and unenforceable, (ii) if the Lease is valid, for damages and turnover equal to the amount of rent set forth in the lease from December 1, 2013, and (iii) if the Lease is not valid, permanently enjoining the Defendants and their agents and anyone acting in concert with any of them from entering into and performing any work in the demised premises.

23. On March 5, upon the Trustee's motion, the Court entered an Order (the "<u>Preliminary Injunction Order</u>") enjoining and prohibiting the Defendants, and their officers, employees, contractors, servants, agents and anyone acting in concert with or at the direction of any of them from entering into and/or performing any work in the demised premises.  As a basis

8

for the Preliminary Injunction Order, the Court found that the Trustee was likely to prevail on the merits of the allegations in the complaint that the Lease is not valid.

24.  Mr. Yaverbaum has advised the Trustee that the value of the Property will be maximized at the Auction Sale if the Property is unencumbered by the Lease.  The reason is that the residential rent roll is limited because many of the apartments are rent regulated.  The ability to lease the commercial space, as a single space or subdivided, at market rates to a tenant or tenants of its own choosing on terms acceptable to a buyer will be a prime consideration of any potential investor.  Therefore, the Trustee is seeking authority to sell the Property free and clear of the purported tenancy of Liquid Lounge pursuant to section 363(f)(4) of the Bankruptcy Code, because the leasehold interest is in *bona fide* dispute.

**D.   The Successful Bidder(s) are Entitled to the
       Protections of Bankruptcy Code Section 363(m)**

25.  Section 363(m) of the Bankruptcy Code provides certain protections to good faith purchasers.  Section 363(m) provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) … of this section of a sale … of property does not affect the validity of a sale … under such authorization to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. §363(m).  While the Bankruptcy Code does not define "good faith," it has been held that:

> [g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings … A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or any attempt to take grossly unfair advantage of other bidders.'

*Licensing by Paola v. Sinatra (In re Gucci)*, 126 F.3d at 390 (citations omitted).

9

26. No facts exist here that would preclude the Successful Bidder or Second Highest Bidder from obtaining section 363(m) protections. The Trustee submits that the Successful Bidder and Second Highest Bidder have participated in the Auction Sale in good faith, and without any collusion, and the sale is the result of an arm's length transaction between the Trustee and the bidders. Accordingly, the Trustee requests that the Court make a finding that the Successful Bidder, or Second Highest Bidder if the Successful Bidder fails to close, is entitled to the protections of section 363(m) of the Bankruptcy Code.

**RELIEF FROM 14-DAY AUTOMATIC
STAY UNDER BANKRUPTCY RULE 6004(h)**

27. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise." Relief from the 14-day stay would enable the Trustee to close on the sale as promptly as possible, relieving the Debtor's estate of any further burdens or costs imposed on the Property, including the accrual of taxes and emergency repair liens. Further, the Terms and Conditions of Sale require the Successful Bidder to close within seven business days after entry of the approval order. The Trustee requests that the order approving the Auction Sale be effective immediately by providing that the 14-day stay is waived.

28. The Trustee has give notice of the Auction Sale and this Motion as required by the Sale Procedures Order which approved notice provisions, and submits that notice is therefore good, sufficient and appropriate.

29. No prior request for the relief sought has been made.

**WHEREFORE**, for the foregoing reasons, the Trustee requests that the Court (i) approve the Auction Sale, (ii) confirm the Successful Bidder and the Second Highest Bidder, and (iii) authorize the sale of the Property pursuant to sections 363(b) and (f) of the Bankruptcy

10

{00006188v1 }

Code, and enter the order in the form attached as <u>Exhibit 1</u>, together with such other and further relief as the Court considers appropriate under the circumstances.

Dated: New York, New York  
       March 21, 2014

RICH MICHAELSON MAGALIFF MOSER, LLP  
Counsel for the Trustee  
By:

/s/ Howard P. Magaliff  
HOWARD P. MAGALIFF  
340 Madison Avenue, 19th Floor  
New York, NY 10173  
212.220.9402  
*hmagaliff@r3mlaw.com*

<u>**EXHIBIT 1**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                          :
                                                                :   Chapter 11
COMMONWEALTH REALTY GROUP, LLC,        :   Case No. 13-23214 (RDD)
                                                                :
                    Debtor.                                :
---------------------------------------------------------------x

**ORDER AUTHORIZING THE SALE OF THE DEBTOR'S REAL
PROPERTY LOCATED AT 1547 COMMONWEALTH AVENUE,
BRONX, NEW YORK FREE AND CLEAR OF LIENS AND INTERESTS
PURSUANT TO SECTIONS 363(b) AND (f) OF THE BANKRUPTCY CODE**

Upon the motion dated March 21, 2014 (the "<u>Motion</u>") of Howard P. Magaliff (the "<u>Trustee</u>"), the chapter 11 trustee of Commonwealth Realty Group, LLC (the "<u>Debtor</u>"), for entry of an order pursuant to section 363(f) of the Bankruptcy Code, title 11, United States Code (the "<u>Bankruptcy Code</u>"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Local Bankruptcy Rule 6004-1, and notice of the Motion having been given in accordance with this Court's Order (the "<u>Sale Procedures Order</u>") dated March 17, 2014 [doc. 51] (i) approving the terms and conditions (the "<u>Terms and Conditions of Sale</u>") and bidding procedures (the "<u>Bidding Procedures</u>") for the sale of the Property, (ii) scheduling a public auction sale (the "<u>Auction Sale</u>"), and (iii) scheduling a hearing to consider the Trustee's Motion; and being that a sale of the Property is in the best interests of the estate and its creditors, and parties in interest including the residential tenants at the Property; and the Auction Sale having been conducted on April 29, 2014, and _____ having been named the Successful Bidder and _____ having named the Second Highest Bidder at the conclusion of the Auction Sale; and a hearing (the "<u>Sale Hearing</u>") having been held on May 1, 2014, and the Court having considered the arguments of all counsel and interested parties wishing to be heard who appeared at the Sale Hearing, and no adverse interest appearing,

{00006188v1 }

and good and sufficient cause existing for the relief requested, the Court hereby **FINDS** and **CONCLUDES** that:

    A.    Notice of the Auction Sale and the Sale Hearing was good, adequate and sufficient, and all parties in interest were given the opportunity to object to the proposed sale and be heard.

    B.    The Property was adequately marketed.

    C.    The conduct of the Auction Sale was appropriate and there was no collusive bidding.

    D.    _____, with a bid of $_____, is confirmed as the Successful Bidder with the highest and best offer for the Property.

    E.    _____, with a bid of $_____, is confirmed as the Second Highest Bidder.

    F.    Closing with either the Successful Bidder or the Second Highest Bidder provides fair and reasonable consideration to the estate.

    G.    The Trustee has demonstrated sound and prudent business judgment in deciding to sell the Property and approving the Successful Bidder and the Second Highest Bidder. The proposed sale of the Property is in the best interests of the Debtor's estate and its creditors.

    H.    Sale of the Property pursuant to section 363(f) of the Bankruptcy Code is appropriate, because the Trustee has satisfied one or more of the requirements of section 363(f) of the Bankruptcy Code.

    I.    The Auction Sale was fair and reasonable, and at arm's length and in good faith as that term is used at section 363(m) of the Bankruptcy Code. The Trustee, the Successful Bidder and the Second Highest Bidder have acted in good faith and the purchase of the Property by the Successful Bidder or the Second Highest Bidder is deemed to be in good faith.

2

{00006188v1 }

    J.  Waiver of the 14-day automatic stay under Bankruptcy Rule 6004(h) is appropriate under the circumstances.

  Based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

    1.  The Motion is approved as set forth herein.

    2.  Pursuant to 11 U.S.C. §§ 363(b) and (f), the Trustee be, and he hereby is authorized to sell the Property to the Successful Bidder or, if the Successful Bidder fails to close, to the Second Highest Bidder, free and clear of all liens, claims and interests of entities other than the estate of whatever kind or nature, with such liens, claims, interests and encumbrances, if any, to attach to the proceeds of the Auction Sale in such order and priority as they existed immediately prior to the date of the Auction Sale, and subject to, among other things: (a) any state of facts that an accurate survey would show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; (f) any damage or destruction between the date of the Auction Sale and the date of the closing; and (g) all deed restrictions.

    3.  Pursuant to 11 U.S.C. §§ 363(b) and (f), the sale is free and clear of the purported leasehold interest of Liquid Lounge under a purported written lease dated July 2013 between the Debtor, as landlord and Liquid Lounge, as tenant. Liquid Lounge and James Caban are directed to turn over all keys and to immediately vacate the premises subject to the purported lease.

    4.  The sale of the Property is subject to valid residential leases and any applicable law, rule or ordinance in respect of such leases. Pursuant to 11 U.S.C. § 363(f), the sale of the Property is free and clear of all tenancies and occupancies where there is no valid residen-

3

tial lease, subject to any applicable law, rule or ordinance in respect of such tenancies and occupancies.

      5.      The Successful Bidder, or the Second Highest Bidder if the Successful Bidder fails to close, is directed to close on the sale in accordance with the Terms and Conditions of Sale approved by the Sale Procedures Order, and such Terms and Conditions of Sale are hereby incorporated into and made a part of this Order.

      6.      Pursuant to 11 U.S.C. § 363(m), if any or all of the provisions of this Order are reversed, modified, vacated or stayed by subsequent order of this Court or any other court, such reversal, modification, vacatur or stay shall not affect the validity and the enforceability of any obligation, debt or claim incurred or granted or sale made pursuant to this Order, and notwithstanding any stay, reversal, modification or vacatur of this Order, any sale or other obligation of the parties pursuant to this Order arising prior to the effective date of any such stay, reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order.

      7.      All objections to the Motion and the sale of the Property, to the extent not withdrawn or resolved, are denied in all respects.

      8.      The sale of the Property is exempt from the automatic stay requirement of Bankruptcy Rule 6004(h).

      9.      The Trustee is authorized to execute all documents and take all actions necessary to close on the sale of the Property in accordance with the Terms and Conditions of Sale and this Order.

**[concluded on next page]**

10. This Court shall retain jurisdiction with respect to any dispute under this Order.

Dated: White Plains, New York
May __, 2014

_____
Robert D. Drain
United States Bankruptcy Judge

5

{00006188v1 }